**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

JESSE S.,

            Plaintiff,

v.                                                  No. 8:17-CV-0854 (CFH)

COMM'R OF SOC. SEC.,

            Defendant.

---

**APPEARANCES:**                             **OF COUNSEL:**

Schneider & Palcsik                     MARK A. SCHNEIDER, ESQ.
57 Court Street
Plattsburgh, New York 12901
Attorney for Plaintiff

Social Security Administration          ANDREEA L. LECHLEITNER, ESQ.
Office of Regional General Counsel,
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorney for Defendant

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

Currently before the Court, in this Social Security action filed by Jesse S. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 12 and 13.)[1]  For the

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. Dkt. No. 6.

reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

# I. RELEVANT BACKGROUND

## A. Factual Background

Plaintiff was born in 1979, making him 34 years old at his alleged onset date and 36 years old at the date of the ALJ's decision. Plaintiff reported completing the eleventh grade and obtaining a GED. Plaintiff has past work as a maintenance worker, painter, and self-employed daycare provider. At the initial level, Plaintiff alleged disability due to depression from pain, back pain with nerve damage, and chronic sciatica with pain down both of his legs.

## B. Procedural History

Plaintiff applied for a period of disability and disability insurance benefits and Supplemental Security Income on December 31, 2013, alleging disability beginning July 15, 2013. Plaintiff's applications were initially denied on March 28, 2014, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ Carl E. Stephan on September 15, 2015. (T. 25-44.) [2] On February 10, 2016, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 7-24.) On July 19, 2017, the Appeals Council denied

---

[2] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1.)

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law. (T. 12-20.) First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. (T. 12.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 15, 2013, the alleged onset date. (Id.) Third, the ALJ found that Plaintiff's lumbar spondylolisthesis, lumbar stenosis, facet arthropathy, lumbar radiculopathy, and chronic lumbar myofascitis are severe impairments. (Id.) Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 15.) Specifically, the ALJ considered Listing 1.04 (disorders of the spine). (Id.) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform the full range of light work. (T. 16.) Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 19.) Seventh, and last, the ALJ found that Plaintiff is capable of performing jobs existing in significant numbers in the national economy. (Id.) The ALJ therefore concluded that Plaintiff is not disabled.

3

**D. The Parties' Briefings on Their Cross-Motions**

**1. Plaintiff's Motion for Judgment on the Pleadings**

Generally, Plaintiff makes four arguments in support of his motion for judgment on the pleadings. (Dkt. No. 12, at 11-29 [Pl.'s Mem. of Law].) First, Plaintiff argues that the ALJ erred by not giving sufficient weight to the findings and opinions of the treating medical sources. (Id. at 11-18.) Specifically, Plaintiff argues that the ALJ erroneously failed to give proper weight to Plaintiff's May 2013 MRI results (showing a disc extrusion at L3-L4 with central canal stenosis and nerve encroachment as well as degenerative changes at L4-L5) and the opinions of treatment providers David Dempsey, DNP, and Lai Kuang, M.D. (Id. at 16-18.) Plaintiff additionally argues that, if the ALJ needed more records from NP Dempsey, he should have requested them. (Id. at 18.) Plaintiff also argues that the ALJ failed to give sufficient weight to the findings and conclusions of treating psychiatrist Joshua Frank, M.D., consultative examiner Carly Melcher, Psy.D., and non-examining psychiatric medical expert Rita Clark, M.D., indicating that Plaintiff had major depressive disorder with at least moderate limitations. (Id.) Plaintiff argues in particular the ALJ failed to consider Dr. Clark's opinion that Plaintiff was limited to low stress work with no strict production or time requirements. (Id.)

Second, Plaintiff argues that he is disabled by the combination of his spinal impairments, pain, and mental illness. (Id. at. 18-24.) Specifically, Plaintiff argues that, although he does not appear to meet Listing 1.04 for spinal impairments, he does appear to equal that Listing because he has limitations in walking, standing, sitting, bending, and squatting from his lumbar radiculopathy. (Id. at 21-22.) Plaintiff argues that, even if his

4

impairments do not formally equal those of the Listing, his exertional and non-exertional physical limitations were not accurately included in the ALJ's RFC. (Id. at 22.) Plaintiff argues that non-examining medical expert Louis Fuchs, M.D., opined only that Plaintiff did not meet Listing 1.04A and did not address whether or not Plaintiff's spinal impairment equaled the Listing. (Id.)

Plaintiff also argues that he did not have the RFC to perform work because of his non-exertional limitation of pain. (Id. at 22-23.) Plaintiff argues that the ALJ erred by failing to credit Plaintiff's subjective testimony of pain, even though it was supported by objective medical evidence regarding his spinal disorder, and that the ALJ did not consider his pain as a non-exertional limitation in determining the RFC. (Id. at 23.)

Plaintiff additionally argues that he was unable to work because of his non-exertional mental limitations, and that the ALJ erred by not finding Plaintiff's mental impairment to be a severe impairment at Step Two. (Id. at 23-24.) Plaintiff argues that the ALJ failed to properly evaluate his mental limitations at Step Two and failed to include them in the RFC, noting that Dr. Clark opined Plaintiff could only do a low stress job within his physical limitations with no strict production or time requirements. (Id. at 24.)

Third, Plaintiff argues that the ALJ erred by not crediting his well-supported testimony regarding his limitations. (Id. at 24-27.) Specifically, Plaintiff argues that the ALJ's decision does not provide any explanations supporting the adverse credibility finding, identify any substantive inconsistencies in Plaintiff's testimony, or provide any medical evidence contradicting his testimony. (Id. at 27.) Plaintiff also argues that none of the

5

treating sources ever stated he exaggerated his pain and that the objective medical evidence supports his testimony. (Id.)

Fourth, Plaintiff argues the Commissioner did not meet her burden of proof at Step Five. (Id. at 27-29.) In support of this argument, Plaintiff contends that the opinion of consultative examiner Nader Wassef, M.D., (indicating moderate limitations in standing, sitting, lifting, bending, squatting, pushing, pulling, and handling) does not support the ALJ's conclusion that Plaintiff can perform a full range of light work. (Id. at 29.) Plaintiff argues that Dr. Fuchs' non-examining opinion does not consider Plaintiff's non-exertional limitation of pain and is not substantial evidence that Plaintiff can perform light work. (Id.) Finally, Plaintiff argues that the Commissioner did not meet her burden to prove he can perform other work in the economy and that this Court should remand for payment of benefits. (Id.)

## 2. Defendant's Motion for Judgment on the Pleadings

Defendant makes four arguments in support of her general argument that the Commissioner's determination is supported by substantial evidence. (Dkt. No. 13, at 6-23 [Def.'s Mem. of Law].) First, Defendant argues that the ALJ properly evaluated the medical evidence about Plaintiff's back impairment when he determined that Plaintiff could do light work, and that the RFC finding is supported by the opinions of Dr. Fuchs, Dr. Wassef and NP Dempsey as well as Plaintiff's treatment notes. (Id. at 7-12.) Specifically, Defendant contends that Dr. Fuchs was asked whether Plaintiff had an impairment that met or equaled a Listing and he replied that Plaintiff did not have such an impairment. (Id. at 8.)

Defendant argues that Plaintiff has proffered no explanation or evidence to rebut Dr. Fuchs' opinion regarding the Listing or the RFC, and therefore this opinion supports the ALJ's findings regarding the Listings and the RFC for light work. (Id.) Defendant argues that the opinions of an agency medical consultant like Dr. Fuchs may constitute substantial evidence in support of a denial of benefits. (Id. at 8-9.)

Defendant also argues that the ALJ explained that he gave great weight to Dr. Fuchs' opinion because it was consistent with other evidence in the record, including Dr. Wassef's findings. (Id. at 9.) Defendant argues that, contrary to Plaintiff's argument, Dr. Wassef's opinion, rather than being vague, is consistent with the ability to do light work. (Id. at 9-10.) Defendant additionally argues that the opinions from Dr. Wassef and Dr. Fuchs are consistent with the June 2014 and March 2015 assessments of NP Dempsey (indicating moderate limitations in standing, walking, sitting, lifting, and carrying). (Id. at 10.) Defendant argues that NP Dempsey did not state Plaintiff was permanently unable to work, as Plaintiff claims, but rather that his moderate restrictions were permanent and he should avoid labor-intensive work, which is consistent the RFC finding. (Id.)

Defendant also argues that, although the ALJ did not explicitly discuss NP Dempsey's opinions in his decision, this does not mean he did not consider them. (Id. at 10-11.) Defendant additionally argues that, in determining the RFC, the ALJ also considered Plaintiff's treatment notes (explaining the examination findings were benign) and the MRI findings (explaining that the fact that the record contained diagnostic evidence of a condition did not mean that Plaintiff had functional limitations from that condition). (Id. at 11-12.)

7

Second, Defendant argues that the ALJ properly found Plaintiff did not have a severe mental impairment because he did not have more than mild limitations in his ability to do basic work-related mental activities. (Id. at 12-19.) Specifically, Defendant argues that the opinion of Dr. Melcher, the opinion of NP Dempsey, most of the opinion of Dr. Clark, and Plaintiff's treatment notes indicate he did not have a severe mental impairment. (Id. at 19.)

Defendant argues that the ALJ explained his reasoning, relying in part on the opinion and findings of consultative examiner Dr. Melcher, which Defendant argues may serve as substantial evidence in support of the ALJ's decision. (Id. at 14.) Defendant also argues that the ALJ reasonably relied upon Dr. Melcher's opinion because it was well-supported by her examination findings and, as the ALJ noted, Plaintiff's statements to Dr. Melcher regarding his activities of daily living. (Id. at 14-15.)

Defendant also argues that the ALJ's finding that Plaintiff did not have a severe mental impairment is supported by NP Dempsey's March 2015 assessment, indicating no mental limitations at all, and NP Dempsey's June 2014 assessment, which indicated no limitations in most areas except for a moderate limitation in Plaintiff's ability to function in a work-setting at a consistent pace. (Id. at 15.)

Defendant additionally argues that the ALJ relied upon portions of Dr. Clark's opinion and reasonably concluded that Dr. Clark's opinion did not preclude Plaintiff from doing simple (unskilled) work. (Id. at 15-16.) Defendant argues that it is not clear that Dr. Clark's opinion, in its entirety, is at odds with the ALJ's finding that Plaintiff's mental impairment was not severe, despite Dr. Clark's opinion restricting Plaintiff to low stress

8

work with no shift or time requirements. (Id. at 16-17.) Specifically, Defendant argues that Dr. Clark did not define "low stress" to mean Plaintiff could not respond appropriately to supervision, carry out simple tasks, or deal with changes in a routine and that her narrow definition of low stress work suggests that Plaintiff was not precluded from performing basic work-related mental activities. (Id. at 17.) Defendant also argues that, even if Dr. Clark's restriction to low stress work can be broadly read as showing Plaintiff had a limitation in performing basic work-related activities, it was reasonable for the ALJ not to adopt this limitation because it was inconsistent with the rest of Dr. Clark's opinion. (Id.) Defendant argues that the ALJ was entitled to rely on most of Dr. Clark's opinion, which was supported by the evidence, and reject the portion which was not consistent with the record as a whole (which was also more ambiguous). (Id.)

Defendant also argues that the ALJ considered Plaintiff's treatment notes, which further supported his finding that Plaintiff did not have a severe mental impairment. (Id. at 17-19.) Defendant also argues that any error in the ALJ's finding at Step Two would be harmless because the ALJ found Plaintiff had other severe impairments. (Id. at 19.)

Third, Defendant argues that the ALJ properly evaluated Plaintiff's subjective allegations of symptoms in accordance with the regulatory framework and reasonably found that they were inconsistent with other evidence in the record. (Id. at 19-22.) Specifically, Defendant argues that the ALJ reviewed Plaintiff's treatment and found his allegations of disability were not supported by his clinical findings (which were benign). (Id. at 20-21.) Defendant also argues that the ALJ considered Plaintiff's activities of daily living

9

and acknowledged that, although Plaintiff's activities were limited, he remained able to engage in many daily tasks. (Id. at 21-22.)

Fourth, Defendant argues that the ALJ properly concluded Plaintiff could do other work. (Id. at 22-23.) Specifically, Defendant reiterates that the burden is on Plaintiff to prove his RFC, and that the ALJ met his burden at Step Five by relying upon Medical-Vocational Rule 202.17 to conclude that Plaintiff could perform other work. (Id. at 22-23.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); accord Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983), Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); accord McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thompson, 540 U.S. 20, 24 (2003).

### III. ANALYSIS

#### A. Whether Substantial Evidence Supports Plaintiff's Mental Impairment, RFC, and the Opinion Evidence

At Step Two, the ALJ must determine whether the claimant has a severe impairment that significantly limits his physical or mental abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding,

12

remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations. See Taylor v. Astrue, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing Gibbs v. Astrue, No. 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)). "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims,' [] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." Taylor, 32 F. Supp. 3d at 265 (quoting Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995); Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Overall, the claimant retains the burden of presenting evidence to establish severity. Id. (citing Miller v. Comm'r of Soc. Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has indicated the failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing she adequately considered the evidence related to the impairment that is ultimately found non-severe. See Fuimo v. Colvin, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing Dillingham v. Astrue, No. 09-CV-0236, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), Report and Recommendation adopted by 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); see also Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (finding that any error in failing to find plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present,

continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." Pardee, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" Hendrickson v. Astrue, No. 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

Here, the ALJ found that Plaintiff's lumbar spondylolisthesis, lumbar stenosis, facet arthropathy, lumbar radiculopathy, and chronic lumbar myofascitis are severe impairments. (T. 12.) The ALJ found that Plaintiff has the RFC to perform the full range of light work. (T. 16.)

At Step Two, the ALJ noted Plaintiff's reported history of depression and mental health treatment. (T. 13-14, 178-279, 362-412.) The ALJ also noted Dr. Melcher's March

14

2014 consultative examination (indicating a diagnosis of a recurrent major depressive disorder and opiate/alcohol dependence in remission) and medical expert Dr. Clark's review of the file (indicating a diagnosis of major depression). (T. 14, 285-90, 475-83.) The ALJ concluded that Plaintiff's medically determinable mental impairment (indicated as major depression) does not cause more than minimal limitation in his ability to perform basic mental work activities and is therefore not severe. (T. 14.) The ALJ also found that Plaintiff has a mild limitation in activities of daily living, no limitation in social functioning, a mild limitation in concentration, persistence or pace, and no episodes of decompensation of extended duration. (T. 14-15.) Within his RFC analysis, the ALJ noted the opinions of Dr. Melcher and Dr. Clark and indicated that Plaintiff's ability to perform simple tasks is unaffected. (T. 18.) The ALJ indicated that a severe impairment is predicated upon the inability to perform simple tasks. (Id.)

In March 2014, consultative examiner Dr. Melcher observed Plaintiff was cooperative and related adequately. (T. 286.) He had a coherent and goal-directed thought process, a full range affect that was dysphoric and flat at times, a euthymic mood, clear sensorium, intact attention and concentration, mildly impaired recent and remote memory skills due to emotional distress secondary to depression, average cognitive functioning, and fair insight and judgment. (T. 287.) Dr. Melcher diagnosed major depressive disorder (recurrent), opiate dependence in remission, and alcohol dependence in remission. (T. 288.) She opined Plaintiff is able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, and make appropriate decisions. (Id.) She also opined Plaintiff has mild

15

limitations maintaining a regular schedule, learning new tasks, performing complex tasks independently, and relating to others. (Id.) She opined he has a mild-to-moderate limitation appropriately dealing with stress and noted that the results of the examination appeared to be consistent with psychiatric problems, but this in itself, did not appear to be significant enough to interfere with his ability to function on a daily basis. (Id.) She noted Plaintiff would need assistance to manage funds due to recent remission from substance abuse. (T. 288.) The ALJ indicated Dr. Melcher's opinion was entitled to considerable weight and that her opinion was consistent with Dr. Clark's opinion. (T. 18.)

In December 2015, medical expert Dr. Clark responded to medical interrogatories and noted a diagnosis of major depression. (T. 475.) She indicated Plaintiff did not meet a Listing. (T. 477-78.) Dr. Clark opined that Plaintiff has mild restriction of activities of daily living, no difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and one hospitalization in 2011. (T. 476.) She also opined Plaintiff has moderate limitations in the ability to understand, remember and carry out complex instructions and make judgments on complex work-related decisions. (T. 480.) In response to a question asking her to identify what Plaintiff could still do in a work setting on a sustained basis despite his mental impairment, she indicated a low stress job within his physical limitations and having no strict production or time requirements. (T. 479.) The ALJ found that Dr. Clark's opinion was entitled to considerable weight. (T. 18.)

Plaintiff argues that the ALJ failed to properly evaluate his mental limitations at Step Two and failed to include them in the RFC. (Dkt. No. 12, at 24 [Pl.'s Mem. of Law].) The Court finds this argument persuasive in light of the ALJ's RFC finding which does not

contain any mental limitations. (T. 16.) Generally, the failure to find an impairment severe at Step Two may be considered harmless, and the Court would be inclined to find such a failure to be harmless error, since the ALJ found other impairments to be severe and continued with the sequential evaluation. However, the opinion evidence (and the ALJ's treatment of that evidence, discussed further infra), calls into question whether the ALJ properly considered the evidence related to this impairment.

Plaintiff argues that the ALJ failed to properly consider the opinion evidence regarding his mental impairment and resulting limitations.[3] (Dkt. No. 12, at 18 [Pl.'s Mem. of Law].) The Court agrees.

First, the ALJ's analysis of Dr. Clark's opinion fails to address her indication that Plaintiff can do a low stress job within his physical limitations and having no strict production or time requirements. (T. 18, 479.) The ALJ provides no explanation of how he analyzed this portion of Dr. Clark's opinion, leaving the Court unable to determine if he considered it at all. (T. 18.) Defendant argues that, even if Dr. Clark's restriction to low stress work can be broadly read as showing Plaintiff had a limitation in performing basic work-related activities, it was reasonable for the ALJ not to adopt this limitation because it was inconsistent with the rest of Dr. Clark's opinion. (Dkt. No. 13, at 17 [Def.'s Mem. of

---

[3] The Court notes that Plaintiff also argues that the ALJ failed to properly consider the opinion evidence regarding his physical impairments and resulting limitations as well as his non-exertional limitation of pain. (Dkt. No. 12, at 11-18 [Pl.'s Mem. of Law].) The Court's review of this portion of the ALJ's analysis indicates that a physical RFC for the full range of light work is generally supported by the record, including Plaintiff's treatment history and the opinions of Dr. Fuchs, Dr. Wassef, and NP Dempsey indicating mainly moderate physical limitations. (T. 18-19, 291-95, 431, 433, 414-15, 465-74.) However, because remand is necessary to address the deficiencies in the ALJ's analysis of Plaintiff's mental RFC, the ALJ should also conduct an analysis of Plaintiff's physical RFC as part of that review to the extent that it is impacted by the analysis of Plaintiff's mental impairments.

17

Law].)  More specifically, Defendant argues that the ALJ was entitled to rely on most of Dr. Clark's opinion, which was supported by the evidence, and reject the portion which was not consistent with the record as a whole and was also more ambiguous.  (Id.)

However, the ALJ did not provide sufficient analysis indicating such a rejection or explaining why this portion of Dr. Clark's opinion was rejected.[4]  (T. 18.)  The ALJ is required to provide rationale in the written decision sufficient to allow this Court to conduct an adequate review of his findings.  See Booker v. Astrue, No. 07-CV-0646, 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing Ferraris, 728 F.2d at 587); Hickman ex rel. M.A.H. v. Astrue, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002)).  Defendant's after-the-fact attempts to cure deficiencies in the ALJ's decision cannot be accepted as a substitute for explanation from the ALJ.

Second, the ALJ's RFC analysis regarding Plaintiff's mental impairment and resulting limitations lacks sufficient specificity and rather focuses on Plaintiff's ability to perform simple tasks without fully addressing limitations.  (T. 16-19, 479.)  Specifically,

---

[4] The Court notes a similar issue with the ALJ's analysis of medical expert Dr. Fuchs' opinion, to which the ALJ afforded great weight.  (T. 18.)  The ALJ failed to sufficiently address Dr. Fuchs' opined limitations including that Plaintiff can continuously lift and/or carry up to 10 pounds and frequently lift and/or carry up to 20 pounds; sit for two hours at a time for a total of eight hours, stand for one hour at a time for a total of three hours, walk for one hour at a time for a total of three hours, occasionally climb ladders or scaffolds, stoop, kneel, crouch and crawl, frequently climb stairs and ramps, occasionally tolerate exposure to humidity, wetness and extreme cold/heat, and never tolerate exposure to vibrations.  (T. 469-72.)  While purporting to afford great weight to his opinion, the ALJ provides no explanation as to why portions of Dr. Fuchs' opinion (including postural and environmental limitations) were not included in the RFC, which indicates a full range of light work.  (T. 16, 18.)

within his analysis of Dr. Clark's opinion, the ALJ emphasized that Plaintiff's ability to perform simple tasks was unaffected. (T. 18.) The ALJ noted that Dr. Clark indicated moderate deficits in Plaintiff's concentration and attention, but "that she refined her opinion, finding that [Plaintiff] had no deficits in his ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions. Deficits in attention [and] concentration imposed moderate restrictions on [Plaintiff's] ability to understand and carry out complex tasks only." (T. 18.) The ALJ provides no explanation as to why Plaintiff was therefore not limited to simple work or if that limitation was considered in light of Dr. Clark's opinion. (Id.)

Third, the Court finds the ALJ's emphasis on the non-severity of Plaintiff's mental impairment troubling because it appears that he conflates severity with disability by explicitly stating that a "severe impairment is predicated upon the inability to perform simple tasks" and ultimately including no mental limitations in the RFC. (T. 18; citing 20 C.F.R. §§ 404.1521, 416.921.) It is therefore not clear that the ALJ applied the correct legal standard when assessing the severity of Plaintiff's mental impairment, and consequently, the RFC. This troubling conclusion combined with the ALJ's lack of sufficient analysis of Dr. Clark's opinion renders the Court unable to find that the severity and mental RFC determinations are supported by substantial evidence.

For the reasons above, the Court finds that the severity and RFC determinations and the ALJ's consideration of the opinion evidence regarding Plaintiff's mental impairment are not supported by substantial evidence. Remand is therefore required on this basis.

## B. Whether Substantial Evidence Supports the ALJ's Listing, Credibility and Step Five Findings

Because remand is necessary and the ALJ will be required to address the above-noted deficiencies in considering Plaintiff's RFC and the opinion evidence when issuing a new decision, the Court declines to reach a finding regarding Plaintiff's other arguments. (Dkt. No. 12, at 18-24 [Pl.'s Mem. of Law].) However, on remand, the ALJ should also conduct a complete analysis of all steps of the sequential evaluation to reflect his reconsideration of the findings related to severity and the RFC consistent with this Decision and Order as part of that review.

## IV. CONCLUSION

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **VACATED**, and this case is **REMANDED**, pursuant to Sentence Four of 42 U.S.C. § 405(g) for proceedings consistent with this Decision and Order.

**IT IS SO ORDERED**.

Dated: September 19, 2018
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge